IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company, | ) | |
| | ) | C.A. No.   3:22-cv-02168-MGL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Vulcan Materials Company, Vulcan | ) | **(Jury Trial Requested)** |
| Construction Materials, LLC, Legacy Vulcan, | ) | |
| LLC, Vulcan Lands, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

COMES NOW Plaintiff, Norfolk Southern Railway Company ("NSRC" or "NS"), by and through undersigned counsel, and for its complaint against the Defendants, Vulcan Materials Company, Vulcan Construction Materials, LLC, Legacy Vulcan, LLC and Vulcan Land, Inc. (collectively, "Vulcan" or "Defendants"), alleges and states the following:

## NATURE OF THE ACTION

1.     This is a strict liability, negligence, negligence *per se*, nuisance and trespass action arising from an incident that occurred on or about February 8-9, 2020 involving the failure and/or collapse of the wall/embankment surrounding an open pit surface mine at the Dreyfuss Quarry owned, controlled and operated by Vulcan in or near the Nipper Creek area of Richland County, South Carolina.

2.     At all pertinent times, Vulcan utilized the relevant portion of the Dreyfus Quarry as a reservoir or retention pond for water, to prevent release of water from the quarry into the surrounding Nipper Creek area, and also to prevent water from Nipper Creek and the nearby Broad River from entering the quarry.

1

3.      S.C. Code Ann. § 49-11-120 provides as follows: "Dam means an artificial barrier with appurtenant works, including, but not limited to, dams, levees, dikes, or floodwalls for the impoundment or diversion of waters or other fluids where failure may cause danger to life or property."   The statute further provides: "Reservoir means a reservoir which contains the impoundment of water by a dam or reservoir. …".   Further, 49 C.F.R. § 59.1 defines "levee" as follows: "*Levee* means a man-made structure, usually an earthen embankment, designed and constructed in accordance with sound engineering practices to contain, control, or divert the flow of water so as to provide protection from temporary flooding."  As such, the Dreyfus Quarry mine wall/earthen embankment surrounding the Dreyfuss Quarry is considered to be a dam, reservoir and/or levee under applicable state and federal laws and regulations and must comply with all laws and regulations pertaining thereto.

4.      The failure and/or collapse of the quarry wall/embankment at the time of the subject incident caused adverse hydrologic conditions in and around Nipper Creek that led to the destruction of a nearby railroad bridge owned by Plaintiff NSRC, resulting in substantial property loss and other damages by NSRC.

5.      As set forth more fully herein, Vulcan failed to exercise reasonable care in the construction, development, inspection and/or maintenance of the Dreyfus Quarry wall/embankment such that the wall/embankment was unable to withstand foreseeable rainfall conditions that occurred in this area on or about February 8 – 9, 2020.

6.      Further, Vulcan violated applicable statutes and regulations designed to prevent property damage to persons, businesses and corporations such as Plaintiff.

7.      Vulcan's actions and omissions interfered with Plaintiff's use and enjoyment of its property and ability to conduct business due to the damage and loss of use of the destroyed railroad bridge.

8.      Plaintiff's damages are on-going, but to date Plaintiff has incurred damages in excess of $3,200,000 for remediation and repair as a result of Vulcan's actions and omissions as described more fully herein, and will incur additional damages in excess of $3,000,000 relating to reconstruction of the bridge, culverts and other property damaged as a result of Defendants' actions and omissions.

## PARTIES

9.      Defendant Vulcan Materials Company ("Vulcan Materials") is, upon information and belief, a corporation organized under the laws of the State of New Jersey with its principal place of business in Alabama.

10.      Defendant Vulcan Construction Materials, LLC ("Vulcan Construction") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Alabama.

11.      Defendant Legacy Vulcan, LLC ("Legacy Vulcan") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Alabama.

12.      Defendant Vulcan Lands, Inc. ("Vulcan Lands) is, upon information and belief, a corporation organized under the laws of the State of Texas with its principal place of business in Alabama.

13.      Upon information and belief, Defendant Vulcan Materials is the sole member and owner of each of Defendant Vulcan Construction and Defendant Legacy Vulcan.

14.     Defendant Vulcan Materials conducts business and owns real property, including quarries and mines, in the State of South Carolina.  One of these quarries owned and operated by Defendant Vulcan Materials is the Dreyfus Quarry located at 1201 Caughman Road N, Columbia, South Carolina in Richland County ("the Dreyfus Quarry") [1].

15.     Defendant Vulcan Materials is a producer, supplier and distributor of construction aggregates and materials produced from minerals it and its affiliates mine from property located in the State of South Carolina, including the Dreyfus Quarry.

16.     Upon information and belief, Defendant Vulcan Materials managed, directed, operated, controlled and/or engaged in oversight of operations of its subsidiaries Defendant Vulcan Construction, LLC and Defendant Legacy Vulcan, LLC for a period of time prior to and through February 8 – 9, 2020.

17.     Upon information and belief, prior to and through February 8 – 9, 2020, each of Defendant Vulcan Construction and Defendant Legacy Vulcan, through their respective representatives, employees, agents and contractors, owned, leased, operated, managed, controlled, directed, participated in the operations, engaged in oversight, made decisions related to and/or was otherwise responsible for, in whole or in part, the conditions at the Dreyfus Quarry in Richland County, South Carolina and regularly transacted business in South Carolina as a producer of construction aggregates mined therefrom for the benefit of their corporate parent Defendant Vulcan Materials and its affiliates.

18.     Prior to and through February 8 – 9, 2020, on information and belief, Defendant Vulcan Materials, through its representatives, employees, agents, contractors, subsidiaries and/or affiliates, owned, leased, operated, managed, controlled, directed, participated in operations,

---

[1] Upon information, the Dreyfus Quarry includes what was formerly known as the Greenwood Quarry, as Defendants combined these two quarries in 2011 or earlier.

engaged in oversight, made decisions related to and/or was otherwise responsible for, in whole or in part, the conditions at the Dreyfus Quarry in Richland County, South Carolina.

19.      As of the date of the incident in question and at other pertinent times, Defendant Vulcan Lands owned, leased, operated, managed, controlled, participated in operations, engaged in oversight, made decisions related to and/or was otherwise responsible for, in whole or in part, the conditions that existed on the land known as the Dreyfus Quarry.

20.      Prior to and through February 8 – 9, 2020, on information and belief, Vulcan jointly owned, leased, managed and/or operated the Dreyfus Quarry to mine, produce and sell aggregates mined therefrom in South Carolina and various other states.

21.      NSRC is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Georgia. NSRC conducts business as a common carrier by rail in Richland County, South Carolina.

## JURISDICTION AND VENUE

22.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

23.      There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24.      This Court has personal jurisdiction over each Defendant because each has personally availed itself of the benefits and privileges of doing business and/or owning property in the State of South Carolina.  Further, each Defendant committed one or more torts alleged herein in South Carolina, which proximately caused Plaintiff to suffer significant injuries in South Carolina, as further stated herein.

25.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that the events and a substantial part of the omissions giving rise to the claim occurred in this district and the property that is the subject of this action is situated in this District and/or pursuant to 28 U.S.C. § 1391(b)(3) in that Defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

26.    NSRC is a common carrier by rail that operates railway lines and provides freight rail services in twenty-two (22) states and the District of Columbia.

27.    At all times pertinent hereto, NSRC provided freight rail services in the State of South Carolina over rail lines totaling approximately 679 route miles.

28.    The rail bridge, track and associated fixtures, structures and appurtenances located at or about latitude 34° 7'12.21"N, longitude 81° 7'18.02"W in Richland County, South Carolina (collectively referred to herein as "NS Bridge W-150.6" or "the railroad bridge") is part of NSRC's rail system and was owned by NSRC as of February 8-9, 2020 and at all other times pertinent hereto.

29.    At all times pertinent to this lawsuit, NSRC had a legal interest in and right to control, use and enjoy the real property through which NS Bridge W-150.6 runs.

30.    NS Bridge W-150.6 is located on NSRC's rail line that runs to the northwest of Columbia, South Carolina and is commonly known as the W-Line.

31.    At all times pertinent hereto, NSRC utilized the W-Line, including NS Bridge W-150.6, to transport freight in interstate commerce.

32.    NS Bridge W-150.6 crosses Nipper Creek approximately three hundred thirty feet (330 ft.) upstream of Nipper Creek's confluence with the Broad River.

33.     The Dreyfus Quarry is, and at all times pertinent hereto was, located at or about 34° 7'12.13"N, longitude 81° 7'11.85"W and a portion of Nipper Creek was located within the property boundaries of this plat of land.

34.     At all times pertinent hereto, NS Bridge W-150.6 was located downstream of the Dreyfus Quarry with respect to each of the Broad River and Nipper Creek.

35.     Defendants purchased the Dreyfus Quarry in or around June 2002 and the mining permit was transferred to "Vulcan Materials" on June 26, 2002.

36.     As of 2012 or earlier, Defendants combined or annexed the Dreyfus Quarry with the adjacent property known as the Greenwood Quarry and, collectively, the two properties became known as the Dreyfus Quarry.

37.     Upon information and belief, as of February 2020, mining operations in the excavated pit of the original Dreyfus Quarry had terminated (such area referred to herein as "the Old Quarry Pit").  Upon information and belief, as of February 2020, mining was being conducted in the area of the Dreyfus Quarry formerly known as the Greenwood Quarry ("the Active Quarry Pit").

38.     As of February 9, 2020 and at all prior times pertinent hereto, Defendants, individually or jointly, by and through their respective agents, employees, contractors, predecessors or subsidiaries, conducted business activities and/or engaged in mining operations at the Dreyfus Quarry.

39.     As of February 9, 2020 and at all prior times pertinent hereto, Defendants, individually or jointly, by and through their respective agents, employees, contractors, predecessors or subsidiaries, were operators of the Dreyfus Quarry pursuant to the South Carolina Mining Act, S.C. Code Ann. §§ 48-20-10 *et seq.* (the "South Carolina Mining Act").

40.     As operators of the Dreyfus Quarry, Defendants were required to comply with applicable provisions of the South Carolina Mining Act, § 48-20-10, *et seq.*, and its regulations, Reg. 89-10 *et seq*. (collectively, the "SCMA Regulations").

41.     Prior to the incident at issue, the South Carolina Department of Health and Environmental Control (SCDHEC) had issued a mining permit for mining activities at the Dreyfus Quarry.

42.      Defendants were required to operate and maintain the Dreyfus Quarry pursuant to the terms of all permits issued by the State of South Carolina, including but not limited to the mining, water and other environmental permits issued by SCDHEC that were in effect as of February 2020 and all other times relevant to this lawsuit.

43.     During the term of their ownership, lease, operation and/or control of the Dreyfus Quarry, Defendants had a duty to inspect periodically the quarry walls of the Old Quarry Pit for evidence of water intrusion, erosion, improper vegetation, piping, seepage and other characteristics related to stability or might suggest instability of the quarry walls.

44.     During the term of their ownership, lease, operation and/or control of the Dreyfus Quarry, Defendants had a duty to test periodically the stability of the quarry walls of the Old Quarry Pit.

45.     Defendants were required by law to develop a reclamation plan to establish, on a continuing basis, vegetative cover, soil stability and water and safety conditions appropriate to the Dreyfus Quarry ("the Reclamation Plan") and to effectuate the Reclamation Plan simultaneously with mining whenever feasible and, in any event, initiate reclamation of the applicable land at the earliest practicable time and no later than within 180 days following termination of mining on any segment of the mine.  The reclamation of any area of the Dreyfus Quarry where mining had

terminated was required to be completed within two (2) years after the termination of mining on that segment of the Dreyfus Quarry.

46.    As of February 8-9, 2020 and prior thereto, Defendants were required to comply with various applicable federal, state and local laws including but not limited to the Clean Water Act, the Safe Drinking Water Act, the South Carolina Mining Act, the Federal Mine Safety & Health Act, stormwater regulations and industrial wastewater regulations.

47.    A wall of earthen material forms the boundary of the Old Quarry Pit and was created, constructed or otherwise formed, in whole or in part, by Defendants, their agents and/or their predecessor(s) in connection with and/or as a result of their mining of the land for rock, sand and other earthen material.

48.    The interior of the Old Quarry Pit is an open pit of excavated land.  The quarry wall of the Old Quarry Pit includes a sloped berm of earthen material at the top ("the earthen embankment").

49.    Upon information and belief, relevant portions of the quarry wall of the Old Quarry Pit consisted of earthen material which was unconsolidated or otherwise susceptible to erosion, seepage, piping, intrusion of water or other mode of structural failure.

50.    Upon information and belief, Defendants did not have an engineer design the embankment and Defendants have had no engineering studies done relating to the embankment to evaluate its design and/or suitability for its intended purpose.

51.    Vulcan represented to the U.S. Amy Corps of Engineers in April 2020 that mining had terminated in the Old Quarry Pit approximately five (5) years prior to February 8, 2020.

52.    The buffer area between the Old Quarry Pit and Nipper Creek prior to February 8, 2020 was less than one hundred feet (100 ft.).

53.    Vulcan allowed water to collect in the Old Quarry Pit for a period of time prior to and including February 8-9, 2020.  Upon information and belief, the Old Quarry Pit was a retention pond or reservoir used for rainwater and stormwater and to provide a water source for washing rock and dust suppression.  The Old Quarry Pit experienced water seepage, piping, erosion and/or water intrusion through or over the quarry walls prior to February 6-9, 2020.

54.    Vulcan knew or should have known that the Old Quarry Pit had experienced water seepage, piping, erosion, and/or water intrusion through or over the quarry walls prior to February 6-9, 2020.

55.    Prior to the incident on February 8-9, 2020, Vulcan knew or should have known that the quarry wall of the Old Quarry Pit was not structurally stable enough to withstand foreseeable weather events.

56.    Upon information and belief, relevant portions of the quarry wall of the Old Quarry Pit were not adequately stable to impound water of the amount and/or duration that water was impounded in the Old Quarry Pit.

57.    Vulcan's employees represented to SCDHEC that the water in the Old Quarry Pit as of February 2020 was so high that they had begun discharging water from the Old Quarry Pit the month prior.  Upon information and belief, water remained in the Old Quarry Pit reservoir during the time period of February 6 – February 9, 2020.

58.    As of the dates of the incident at issue and for several years prior, there were numerous living, dead and uprooted trees and shrubs on the earthen embankment of the Old Quarry Pit.

59.    Defendants did not properly inspect or evaluate the stability of the quarry walls of the Old Quarry Pit properly during the time period they owned, leased, operated or otherwise controlled the Dreyfus Quarry.

60.    Defendants did not properly maintain the quarry walls of the Old Quarry Pit properly during the time period they owned, leased, operated or otherwise controlled the Dreyfus Quarry.

61.    Prior to February 6, 2020, the earthen embankment suffered structural damage over time from woody vegetation, rain, piping, water seepage, erosion and/or other mechanisms of geo-structural failure.

62.    Over the course of approximately 36 hours on February 6, 2020 and February 7, 2020, areas within the Broad River Basin experienced rain of varying degrees.

63.    According to data recorded by the National Weather Service (NWS), the majority of the Broad River watershed upstream of the Dreyfus Quarry and NS Bridge W-150.6 received less than two (2) inches of rainfall, which is less than a 1-year storm frequency, on February 6 – 7, 2021.  Thus, this rain event in these areas was foreseeable.

64.    According to data recorded by the NWS, no area in the Broad River watershed upstream of the Dreyfus Quarry and NS Bridge W-150.6 received rainfall on February 6-7, 2021 greater than a 25-year storm frequency.  Thus, this rain event in these areas was foreseeable.

65.    The rainfall in the upper Broad River Basin resulted in rising water levels in the Broad River and Nipper Creek beginning on February 6, 2021 and continuing until February 9, 2020.  However, at no time during February 6 – February 9, 2021 did the water levels of the Broad River and Nipper Creek, including water levels at the point of their confluence, reach a height that could not be equalized or sustained by NS Bridge W-150.6.

66.    Over a period of time on February 8, 2021 and/or the early morning hours of February 9, 2021, a portion of the earthen embankment forming part of the wall of the Old Quarry Pit adjacent to and located less than 300 feet from Nipper Creek ("the Subject Earthen Embankment"), failed and/or collapsed.

67.    The failure and/or collapse of the Subject Earthen Embankment resulted in water from Nipper Creek and the Broad River rushing into the Old Quarry Pit, the water level of which was below the surface elevation of the adjacent Nipper Creek floodplain, thereby causing a dangerous high velocity hydrologic event or otherwise causing adverse hydrologic conditions which damaged and caused the destruction of NS Bridge W-150.6.

68.    The failure and/or collapse of the Subject Earthen Embankment caused an adverse hydrologic event and also caused various environmental consequences, including the outflow of contaminants from the Old Quarry Pit into Nipper Creek and the Broad River and the scouring of the riverbed and floodplain.

69.    The failure of the Subject Earthen Embankment and the release of water impounded therein, caused an artificial change in the flow of water in the area surrounding NS Bridge W-150.6 that caused the destruction of the bridge.

70.    The failure of the Subject Earthen Embankment and the resultant release of impounded water and scouring of the riverbed and floodplain caused water to remain on and around the site of NS Bridge W-150.6 and caused the destruction of the bridge.

71.    The peak flooding at the site of NS Bridge W-150.6 during the time period of February 6 – 9, 2020 was equivalent to a 11 ½ year flood frequency event and occurred in the evening of February 8, 2020.  Thus, this flood event was foreseeable.

72.     The destruction of NS Bridge W-150.6 was discovered by Plaintiff on the morning of February 9, 2020.

73.     The peak flooding at the site of the Subject Earthen Embankment during the time period of February 6, 2020, when it began raining in the upper Broad River Basin, through February 9, 2020, when Plaintiff discovered that NS Bridge W-150.6 was destroyed, was at no time more than an 18-year flood frequency event.  Such peak flood frequency event at the site of the Subject Earthen Embankment occurred at approximately the same time in the evening of February 8, 2020 as the peak flooding at the site of NS Bridge W-150.6.   Thus, this flood event was foreseeable.

74.     Woody vegetation, rain, piping, water seepage, erosion and/or other geo-structural failure mechanisms caused the Subject Earthen Embankment to destabilize and fail and/or collapse.

75.     Upon information and belief, Vulcan did not analyze or evaluate the structural stability or condition of the quarry wall, including the earthen embankment, of the Old Quarry Pit prior to allowing water to collect and accumulate in the Old Quarry Pit to determine whether it was appropriate for retaining water, appropriate for keeping water from entering the pit and able to withstand rain events and flood events of the type experienced in this area during February 6 – 9, 2020 as required by the applicable standard of care and applicable laws and regulations.

76.     Upon information and belief, Vulcan did not appropriately analyze or evaluate the structural stability or condition of the quarry wall of the Old Quarry Pit at any point in time prior to February 8, 2020 to determine whether it was appropriate for impounding water in the pit and/or keeping external flows of water from entering the pit and whether it was able to withstand

foreseeable rain events and flood events of the type experienced in this area during February 6 – 9, 2020 as required by the applicable standard of care and applicable laws and regulations.

77.     Upon information and belief, Vulcan did not alter, add to, reinforce or otherwise modify the quarry wall of the Old Quarry Pit to ensure that it was able to withstand foreseeable rain events and flood events of the type experienced in this area during February 6-9, 2020.

78.     Upon information and belief, Vulcan did not properly construct, create and/or maintain the quarry wall, including the earthen embankment, of the Old Quarry Pit in accordance with its mining permit for the Dreyfus Quarry, the applicable standard of care and applicable laws and regulations.

79.     Upon information and belief, the quarry wall of the Old Quarry Pit did not conform to the standards set forth in the regulations promulgated under the Dams and Reservoirs Safety Act, S.C. Code Ann. Regs. 73-10 *et seq.* and/or applicable federal regulations relating to levees.

80.     Upon information and belief, the quarry wall of the Old Quarry Pit, which impounded water, was not designed by a professional engineer.  The failure to engage a professional engineer to design and evaluate the structural stability of the quarry wall is a violation of South Carolina Regulation 89-330(D)(3)(c).

81.     Upon information and belief, the Old Quarry Pit remained open and was not a closed mine.  Alternatively, to the extent Defendants considered the Old Quarry Pit to be a closed mine, Vulcan did not reclaim the Old Quarry Pit in accordance with its mining permit and applicable Reclamation Plan after mining terminated in this portion of the Dreyfus Quarry.

82.     Upon information and belief, Vulcan violated the reclamation standards, permitting requirements, safety standards and/or other applicable provisions of the Dam and Reservoirs Safety Act, S.C. Code Ann. § 49-11-10 *et seq.* and its implementing regulations, S.C. Code Ann.

Regs. 72-1 *et seq.*, in regard to the Old Quarry Pit during the time period it was a reservoir for water.

83.     Upon information and belief, Vulcan failed to exercise reasonable care in the development and maintenance of the quarry wall for purposes of serving as the wall of a reservoir (or retention pond) or otherwise serving as a levee or a dam.

84.     Upon information and belief, Vulcan failed to exercise reasonable care in the development, construction, maintenance and/or inspection of the quarry wall of the Old Quarry Pit to be able to withstand the rain event and the flood event that occurred during February 6 – 9, 2020.

85.     Upon information and belief, Vulcan violated the South Carolina Mining Act and applicable regulations, S.C. Code Ann. Regs 89-10 *et seq.,* by failing to prevent excessive drainage or accumulation or release of excess water that may damage the adjoining property of others.

86.     Upon information and belief, earthen material at the Old Quarry Pit was placed in a manner that resulted in depositing sediment in streams and on NSRC's adjacent property, in a manner inconsistent with land use and/or in a manner that interfered with natural drainage, drainageways and floodways in violation of South Carolina Regulation 89-140.

87.     Upon information and belief, Vulcan violated federal regulation 30 C.F.R. § 56.20010 promulgated pursuant to the Federal Mine Safety and Health Act by failing to comply with the standards set forth therein for the construction and inspection of a dam located within a mine if its failure would create a hazard, as was the case with the Old Quarry Pit and the Subject Earthen Embankment.

88.     Upon information and belief, the structural stability of the quarry wall as of February 8- 9, 2020 was improper for retaining impounded water, for preventing water from the

Nipper Creek floodplain from flowing into the pit and for withstanding the rain event and flood event of the type experienced in this area during February 6 – 9, 2020.

89.    Vulcan knew that the Dreyfus Quarry was in close proximity to the Broad River and Nipper Creek.

90.    At all times pertinent hereto, Vulcan knew or should have known that NS Bridge W-150.6 was located in close proximity to the Old Quarry Pit and that Plaintiff utilized NS Bridge W-150.6 to conduct certain of its business.

91.    The destruction of NS Bridge W-150.6 was the direct and proximate cause of damages to Plaintiff including economic losses from disruption to Plaintiff's freight business, loss of goodwill, costs and expenses to repair and rebuild NS Bridge W-150.6 and other economic damages.

## FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Strict Liability - S.C. Code Ann. § 49-11-10)

92.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

93.    Pursuant to S.C. Code Ann. § 49-11-10, "No person shall be permitted or allowed to make or keep up any dam or bank to stop the course of any waters so as to overflow the lands of another person without the consent of such person first had and obtained . . . ."

94.    Defendants made or kept up a dam or bank which stopped the course of waters causing them to overflow the lands of other persons without the consent of such persons in violation of S.C. Code Ann. § 49-11-10.  As a result, Defendants are strictly liable to Norfolk Southern for all harm and damage caused by their conduct.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer substantial property damage and other damages and injuries as described herein.

### FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Common Law Strict Liability)**

96.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

97.    Vulcan engaged in one or more abnormally dangerous activities in its development, operation and maintenance of the Dreyfus Quarry and the Old Quarry Pit, including but not limited to:

(a) creating, developing, excavating and/or operating a surface mine with structurally unstable walls;

(b) permitting water to accumulate in the Old Quarry Pit such that Vulcan maintained a reservoir of stormwater and rainwater, which was polluted with residual mining materials and contaminants;

(c) discharging this water or allowing it to be discharged downstream at artificially and dangerously high velocity;

(d) operating a levee or dam constructed and maintained for its own, private commercial benefit;

(e) constructing or forming a levee, dam or other flood control structure (*i.e.* the quarry wall of the Old Quarry Pit reservoir) solely by excavating a pit and/or blasting; and

(f) maintaining an open pit mine, which impounds water in an unnatural way, in the floodplains of one or more naturally flowing bodies of water.

98.     Vulcan engaged in these abnormally dangerous activities with knowledge that NS Bridge W-150.6 was located in close proximity and that Plaintiff utilized NS Bridge W-150.6 to operate its business.

99.     An extraordinary risk of damage to property and chattel from the failure of earthen material is created when a mine has structurally unstable walls.

100.    An extraordinary risk of damage to property and chattel from the release of water is created when water is impounded in an unnatural way.

101.    Each of Vulcan's abnormally dangerous activities necessarily involved an extraordinary risk of damage to Plaintiff, including to NS Bridge W-150.6 and Plaintiff's freight rail business.

102.    Each of the Defendants had a nondelegable duty to ensure that abnormally dangerous activities were not conducted, to warn of the harm that could result from the abnormally dangerous activity and/or to prevent the harm to Plaintiff NS that was caused by the abnormally dangerous activities at the Dreyfus Quarry.

103.    As a direct and proximate result of Vulcan's abnormally dangerous activities, Plaintiff suffered and continues to suffer substantial property damage and other damages, injuries and losses as described herein, for which Vulcan is strictly liable.

### **FOR A THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS**

### **(Negligence)**

104.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

105.    Defendants undertook the duties to operate and maintain the Dreyfus Quarry, including the Old Quarry Pit, in accordance with the prevailing and acceptable standards of care

in the United States for mine operators, reservoir owners and operators and levee and/or dam operators and their respective employees and agents, and as further may be required by the state and federal laws applicable to these classes of persons.

106.    Notwithstanding undertaking these duties, Defendants departed from prevailing and acceptable standards of care in the formation, design, operation, maintenance and inspection of the Old Quarry Pit, including the quarry walls, and the reservoir formed by the Old Quarry Pit, including the levee or dam created by the quarry walls, and were thereby negligent, careless, grossly negligent and reckless in violation of duties owed to Plaintiff and, accordingly, liable for one or more of the following acts or omissions, any or all of which are a departure from the prevailing and acceptable standard of care:

    a.    In failing to properly design, construct, develop or create a quarry wall at the Old Quarry Pit that was able to withstand the foreseeable weather and environmental conditions February 6 – 9, 2020;

    b.    In failing to properly design, construct, develop or create a levee and/or dam at the Old Quarry Pit to safely impound water over an extended period of time;

    c.    In failing to properly design, construct, develop or create a quarry wall, levee and/or dam that was appropriate for preventing the intrusion of a foreseeable level of floodwaters;

    d.    In failing to design, construct, develop or create a quarry wall, levee and/or dam at the Old Quarry Pit that was appropriately resistant to seepage, piping, erosion and/or other mechanisms of structural failure;

    e.    In failing to obtain all required permits or governmental approvals for utilizing the Old Quarry Pit as a reservoir;

    f.    In failing to operate the Old Quarry Pit as a reservoir in accordance with issued permits;

    g.    In failing to properly maintain the quarry wall, levee and/or dam at the Old Quarry Pit free from woody vegetation;

h.  In failing to have in place proper and adequate policies, procedures, rules and regulations for the maintenance of the quarry wall, levee and/or dam, as the case may be, in a safe condition;

i.  In failing to properly inspect the quarry wall, levee and/or dam, as the case may be, at the Old Quarry Pit to identify potential or actual structural damage;

j.  In failing to identify gaps and voids in the quarry wall, levee and/or dam and to take corrective action to properly fill such gaps and voids;

k.  In failing to follow the Reclamation Plan outlined in Vulcan's mining permit for the Dreyfus Quarry;

l.  In failing to provide accurate information and reports to governmental agencies, including SCDHEC, including whether mining in certain segments of the Dreyfus Quarry had terminated;

m.  In failing to engage professionals to design, evaluate, analyze and advise Vulcan and to design the quarry wall, levee and/or dam, as the case may be, to be able to safely hold impounded water as required by South Carolina law;

n.  In failing to properly train and educate Vulcan's employees and agents in the methods, principles and standards for creating and/or maintaining the quarry wall, levee and/or dam at the Open Quarry Pit in a stable and safe condition and for identifying warning signs and risk factors for structural damage;

o.  To the extent Vulcan's employees and agents were properly trained and educated on the matters described in subpart (l) above, in failing to allow its employees and agents to exercise independent skill and judgment in such ways;

p.  In failing to prevent the discharge of water and pollutants from the Old Quarry Pit onto the property owned, leased, controlled and/or operated by Plaintiff;

q.  In failing to implement an emergency action plan applicable to any signs of failure of a mine wall, levee and/or dam;

r.  In violating its duty not to worsen the condition of downstream property from conditions which existed prior to and/or in the absence of the water impounded in the Old Quarry Pit;

s.  In violating state and federal laws and regulations requiring Vulcan to protect foreseeable persons, including adjacent property owners and operators such as Plaintiff, from suffering harm, injuries and damages; and

t.  In such other ways as may be revealed through the course of this litigation.

20

107.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the applicable standards of care by Defendants and their respective agents, employees and/or representatives, Plaintiff suffered injuries and damages, including economic losses from the disruption to Plaintiff's freight business, loss of goodwill, costs and expenses to repair and rebuild NS Bridge W-150.6 and other economic damages in an amount to be determined by a jury at the trial of this action.

## FOR A FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS

### (Negligence *Per Se*)

108.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

109.    At all times pertinent hereto, Defendants were operators of the open pit surface mine known as the Dreyfus Quarry and, as such, were required to comply with certain federal, state and local statutes and regulations in the operation and maintenance of the Dreyfus Quarry.

110.    S.C. Code Ann. § 49-11-120 provides as follows: "Dam means an artificial barrier with appurtenant works, including, but not limited to, dams, levees, dikes, or floodwalls for the impoundment or diversion of waters or other fluids where failure may cause danger to life or property."   The statute further provides: "Reservoir means a reservoir which contains the impoundment of water by a dam or reservoir. …".   Further, 49 C.F.R. § 59.1 defines "levee" as follows: "*Levee* means a man-made structure, usually an earthen embankment, designed and constructed in accordance with sound engineering practices to contain, control, or divert the flow of water so as to provide protection from temporary flooding."   As such, the mine wall/earthen embankment surrounding the Dreyfuss Quarry is considered to be a dam, reservoir and/or levee

under applicable state and federal laws and regulations and must comply with all laws and regulations pertaining thereto.

111.    At all times pertinent hereto, Defendants were operators of a levee and/or dam, which served as a flood control structure, and maintained a reservoir of water in the Old Quarry Pit.  As such, Defendants had a duty to comply with certain federal, state and local statutes and regulations in the operation and maintenance of the Old Quarry Pit.

112.    These federal, state and local regulations combine to form minimum standards of care which the Defendants were required to meet and exceed in order to prevent harm to those persons that would be harmed by any failure to do so, including specifically Plaintiff who held a legal interest in property adjacent to the Dreyfus Quarry.

113.    As the operators of the Dreyfus Quarry, under South Carolina law, Defendants were solely responsible for maintaining the Dreyfus Quarry in a safe condition throughout the life of these structures and no action or failure to act relieves Defendants of the duties, obligations, responsibilities or liabilities arising from or incident to the ownership or operation of the mine, dam, reservoir and levee located at the Dreyfus Quarry.

114.    Defendants violated applicable statutes and regulations, as well as the standards set thereby, in their operation and maintenance of the Dreyfus Quarry, including the South Carolina Mining Act and associated regulations, South Carolina Dams and Reservoirs Safety Act and associated regulations, South Carolina Stormwater and Sediment Reduction Act and the federal Mine Safety and Health Act.

115.    The applicable federal, state and local laws are safety statutes and were specifically enacted for the benefit of and to protect the class of persons of which Plaintiff was a member at all pertinent times hereto.

116.    As a direct and proximate result of Defendants' failure to abide by and comply with applicable federal, state and local statutes and regulations, and the standards set thereby, Plaintiff suffered and continues to suffer harm, injuries and damages as described herein, constituting negligence *per se*.

## FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS

### (Nuisance)

117.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

118.    At all times pertinent hereto, Plaintiff held the legal right to the use and enjoyment of NS Bridge W-150.6 and the land on which it is located free from unreasonable interference.

119.    At all pertinent times, Vulcan's Dreyfus Quarry was upstream of Plaintiff's NS Bridge W-150.6.

120.    Vulcan's Old Quarry pit collected surface water.  On February 8-9, 2020, such water was cast downstream in concentrated form and destroyed Plaintiff's NS Bridge W-150.6.

121.    Vulcan did not have a right to discharge the water that collected in the Old Quarry Pit downstream to Plaintiff's NS Bridge W-150.6 on February 8-9, 2020.

122.    Vulcan's alteration of the flow of water at the Dreyfus Quarry on February 8-9, 2020 created a nuisance that substantially interfered with Plaintiff's use and enjoyment of its NS Bridge W-150.6 from February 8-9, 2020 to present.

123.    Vulcan operated and maintained the Dreyfus Quarry in a manner such that the quarry wall, dam and/or levee located at Old Quarry Pit failed or was breached, as the case may be, resulting in artificial hydrologic conditions that directly and proximately caused unreasonable

and substantial interference with Plaintiff's use and enjoyment of NS Bridge W-150.6 on a continuous basis.

124.    Vulcan's actions caused the velocity of the surface water and other impounded water to increase which directly and proximately caused damages to Plaintiff.

125.    The discharge of water from the Dreyfus Quarry and the increased velocity of this water was unreasonable.

126.    The destruction of NS Bridge W-150.6 and, therefore, the interruption of Plaintiff's use and enjoyment of the land upon which it is located, was a natural and probable consequence of Defendants' actions and omissions in discharging water downstream, altering the flow of water and causing the high velocity hydrologic event on February 8-9, 2020.

127.    Plaintiff's use and enjoyment of its NS Bridge W-150.6 and the land upon which it runs would not have been unreasonably interfered with in the absence of Defendant's actions.

128.    As a direct and proximate result of Vulcan's conduct, Plaintiff suffered and continues to suffer harm, injuries and damages as described herein,

## FOR A SIXTH CAUSE OF ACTION

(Trespass)

129.    Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

130.    Defendants' use, maintenance, and operation of the Dreyfus Quarry described herein was improper, unreasonable, and performed with knowledge of the potential harm that discharged water could have on downstream real property and personal property.

131.    Defendants' use, maintenance, and operation of the Dreyfus Quarry described herein caused a physical intrusion of water on Plaintiff's land, denying Plaintiff exclusive possession of such real property and personal property.

132.    In addition, Defendants' conduct divested Plaintiff of its possession of NS Bridge W-150.6.

133.    As a direct and proximate result of the trespass, Plaintiff suffered and continues to suffer harm, injuries and damages as described herein.

WHEREFORE, Plaintiff Norfolk Southern Railway Company respectfully prays for judgment against the Defendants for actual damages, special damages and consequential damages, in an amount to be determined by the jury at the trial of this action, fees, the costs and disbursements of this action, and for such other and further relief as this Court deems proper.

**GALLIVAN, WHITE & BOYD, P.A.**

July 7, 2022                    By:    s/Ronald K. Wray, II
                                       Ronald K. Wray II Fed. I.D. No.: 5763
                                       Kate C. Mettler Fed. I.D. No.: 13062
                                       55 Beattie Place, Suite 1200
                                       P.O. Box 10589
                                       Greenville, South Carolina 29603
                                       (864) 271-5362
                                       rwray@GWBlawfirm.com
                                       kmettler@GWBlawfirm.com

                                       Attorneys for Plaintiff
                                       Norfolk Southern Railway Company